Will hear argument next in Philadelphia Indemnity Insurance Company v. Yeshivat Beth Hillil Acrosna 20-1413. Mr. Bradley? Oh, I apologize. I was on mute. Okay. Well, now we can hear you loud and clear. Go ahead. Okay. Once again, I apologize. Good morning, Your Honors. May it please the court, Christopher Bradley for the appellant, Philadelphia Indemnity Insurance Company. This appeal involves the validity of a disclaimer issued to our insured, the Yeshivat. We submit that Philadelphia properly disclaimed coverage in that the letter of July 18, 2013 clearly lays out the facts of the case. It's indisputable that this involves an automobile accident where a bus struck a pedestrian. The facts of the accident are laid out. The automobile accident is repeatedly referred to. The letter goes on to cite exclusion G, the auto exclusion in its entirety. And this is the ground for the disclaimer, which is that Philadelphia is relying on the automobile exclusion. This is a claim involving an automobile, and it's not covered based on the automobile exclusion. The district court, we submit, erred by interpreting the letter as being limited to two potential scenarios. We don't dispute that the letter contains those two scenarios, but the letter is based on, in large measure, the complaint, the pleadings. And the only allegations in the complaint are, and they're all in the alternative, they plead the same allegations as to the driver, the Yeshivat, and the congregation. But as so, they're all in the alternative. And they allege that the Yeshivat owned the vehicle. They allege that Meyer Klein, the driver, was an employee. Those are the only- Yeah, so I get that. But I mean, it still is the case that in, so the letter is a reservation of rights. You don't specifically disclaim coverage for the Garber litigation, right? All you say is the claim may qualify as an uncovered boss. And you do, you say the two factual scenarios, but neither one of those was borne out. So just before we get to whether it, whether the lay of the factual scenarios limits the scope of the letter, why is it even a disclaimer in the first place, as opposed to a reservation of rights, when you don't actually say, we disclaim coverage for this claim? Well, I believe we do. And, you know, the standard is it has to be sufficient, which means, you know, enough, adequate. At page 12 of the disclaimer, for instance, Philadelphia explicitly states, it is strongly recommended that you have your agent report this claim to them as soon as possible, as this claim may qualify as an auto loss, which is not covered under your commercial general policy. Why say it may qualify as an auto loss? I mean, if you're an insured receiving that letter, you would say, oh, it may qualify as an auto loss. That's worrisome. When would it qualify as an auto loss? Oh, if these two factual predicates that are identified in the letter are met, isn't that the way someone would read this letter? Well, I don't believe so. Again, it's what an objective person taking away, reading this as a whole, and Philadelphia is saying, this claim is not covered. And frankly, as a courtesy, Philadelphia would often say, listen, you may have coverage for this loss elsewhere. And one of the policies was identified. We say repeatedly, this is not an automobile policy. It doesn't cover auto losses. I agree that you didn't have an obligation to, I mean, so let's say you didn't have an obligation to detail every scenario under which you might disclaim coverage, but why not just emphasize the scope of the auto exclusion as opposed to detailing these two factual scenarios from the complaints? Well, it would be hard to do that. Well, at the time the letter was drafted, there was none and frankly has never been any, quote, allegation of a loaner vehicle. That's why Philadelphia, as opposed to some other cases that address, we cite the exclusion in its entirety and we don't parse it out. We don't say, you know, we would cover this or we would cover that. We cite it in its entirety for the insured to review and the injured party. So it's not a matter of us, like in other cases where people have misquoted or even omitted language. One final question, which is about the construction of the endorsements. So I understand that you're arguing that when it says with respect to the is injured, but do you not see that it's possible also to read that phrase as applying to incidents where the underlying activity is the transportation of students and somebody who's not a student gets injured? I mean, is that not a possible reading of it? I don't believe that's a fair reading because of the use of the word transportation. If they wanted to use transporting and the policy, the head of transportation and transporting, you know, to transportation, I believe connotes the transport that pertains to the students on the bus. And by use of the word, you know, transport, the transportation of students, because they as just Parker. Yes, your honor. No, I have no questions. All right. Did you want to follow up just as you have a difference between transportation and transporting? Yeah, I just so I mean, so, so from my perspective, it seems like you could read with respect to the transportation of students to mean what you suggest, which is that it's when a student is injured, but you could also read it to me. And when the underlying activities, the transportation of students and a non-student get get injured, that the exclusion would still apply. I don't see how changing the word transportation to transporting would make a difference between those two readings. So maybe you could clarify how it how it might. Well, I think that, again, transportation, I believe, is specific as to the student. And the intent was to carve out a special category of claimant because we don't disagree that there is a lot of, quote, overlap. And we say there could be scenarios where either one of these exclusions might apply when it involves an injury to a student. It's indisputable that the exclusion applies. In this case, and it's it would be our position, we only rely on exclusion G. But we believe and we did. Mr. Bradley, you have two minutes for rebuttal. We'll hear from the Yeshivat Bethel, Mr. Lansberg. Okay. Good morning, Your Honors. May it please the court, Jack Lansberg for the appellee Yeshivat. I think that this policy and the provisions are pretty straightforward. There's no ambiguity. But to address the specific comments raised in argument just now, I would say if it is the carrier's position that the reservation of rights was a disclaimer for auto claims, why provide a defense? They know on the date they write that letter, because it says it in there, and the allegations are unrefuted, a bus struck the Garbers. The bus is an auto. So if there's any doubt in the policy, or rather, for the carrier, if there's no doubt in the policy that autos are not covered, why provide a defense? Their conduct undercuts their arguments from inception, because it is a reservation of rights. It's not a disclaimer. They cite a number of exclusions that have no possible applicability to these facts. And they harp on the auto exclusion only in two scenarios, which admittedly did not occur. But in fairness, I mean, the letter does say expressly, the commercial policy is not an auto policy. It says the Philadelphia did not insure the bus, and it said you should go contact your auto insurer. Why wouldn't it be obvious to the recipient of that letter that Philadelphia is saying that the auto exclusion are its coverage, and you should rely on your auto policy? Well, for one, they only, they in other sections of the letter say that we're reserving a right to the extent it's found that you owned the auto, in which case the exclusion would apply. So that's contradictory. And two, they fail to include the endorsement, which emphasizes that with respect to the transportation of students, there could be coverage. Or rather, these only other scenarios are excluded. And that's what we had here. And if they reference that as well, it would be clear that, to the insured, that there is an area. You're saying the difference would be if they had just cited the endorsement in addition to the auto exclusion? I'm saying that by, merely because the carriers of the opinion that there's no coverage for auto doesn't make it so. And that them stating that it's their opinion that my client should contact their auto carrier, which may provide separate coverage, does not mean that the auto exclusion under their policy applies, especially whereas here, there's an endorsement that replaces it with respect to the transportation. Can I ask about the endorsement? So the final sentence of the endorsement says that the exclusion applies even if the claimant makes certain negligence allegations, if the incurrence giving rise to the injury involves an auto that is owned or operated by or rented or loaned to any insured. And so doesn't that just cover this case? I mean, you have a loaned auto in this case. The issue with that is twofold. One, I would argue that it's ambiguous because the first paragraph, which deliberately removed the term loaned from the identical provision in the auto exclusion, creates an ambiguity that would be interpreted in my client's favor. And two, as the lower court noted repeatedly, and the carrier admitted in their argument just now, they cannot assert that exclusion. So even if it does apply, even if this court finds that that second paragraph does apply, the carrier is waived from asserting that argument. You cannot- I get that. I get the waiver argument. I'm just asking about the scope of the endorsement. So you're saying that the final sentence of it, sending a loan would exclude coverage here. It's only ambiguous because there's another sentence. I'm not saying that it would or wouldn't, Your Honor. I'm not saying that it would or wouldn't. And for the purposes of this appeal- I'm curious about your position. So I'd like- Yeah, go ahead. Your Honor, that issue was never really briefed in any of the papers, so I cannot argue more about that. But I know that counsel for the Garbers did present more of an argument on that issue. So I'll leave it to them to argue. That's a very good segue, Mr. Glansberg. Mr. Kellner. Can I just make one more point? Very briefly. Very briefly. With respect to the transportation of students, if the carrier wanted it to be applied only to the students, they could have written it with respect to the students being transported. That's not what it says. Mr. Kellner. That was an alarm for my time, Your Honors. Thank you very much. Thank you. Mr. Kellner. Thank you, Your Honor. And may it please the Court, my name is Joshua Kellner, and I represent MG. If I might, I'd like to start first on the issue of the sufficiency of the Reservation of Rights letter, and to address a question that Judge Menasche asked, which is, why wouldn't it be obvious to the insured receiving this letter that they were disclaiming purely on the basis of the fact that the accident involved a vehicle? And the first answer to that is because it doesn't say that any place in the letter. It would have been very easy for them to say in the letter, we are disclaiming based purely on the fact that this case involves a vehicle. They didn't do that. The only reference they made to the applicability of the auto exclusion is where they say, if this vehicle was owned by the yeshivot, then we may disclaim. But if their position is purely that it involves a vehicle, they can disclaim, then the ownership is irrelevant. So to whatever extent they were trying to express that, and I think it's clear to any reader of this letter that they weren't, that language isn't just wrong, it would be misleading. So the disclaimer- Oh, why isn't the way to read the letter the following? They say, this letter, your commercial policy is not an auto policy. We don't cover auto incidents, and you should contact your auto insurer, because if the allegations of this complaint are shown, you know, we're not going to cover the claim. And so what about your opposing counsel's point that the factual scenarios are there just to respond to the allegations of the complaint, but don't control the scope of the auto exclusion? Certainly. Well, the wording that your honor just suggested doesn't appear anywhere in the letter. They never say in the letter, if the allegations of the complaint are true, there is no coverage for this case. What they say is there are two potential factual scenarios under which we might later deny coverage. And we all agree here that neither of those scenarios came to pass. And also I would note that the complaint alleged that the yeshiva was negligent in connection with management and control of the bus, and certainly for client's activity in operating the bus. So to the extent that plaintiff's counsel is trying to say that there was some narrowness to the complaint that they weren't responding to, I don't know that that's certainly not what's in their letter. Turning then, if I might, to the issue of the endorsement. The endorsement is important for two reasons. Number one, to whatever extent it replaces the auto exclusion here, everybody agrees they are stopped from relying upon it and that their attempt to deny coverage is improper. So really the question then is what does the term with respect to the transportation of students mean? And plaintiff's counsel tried to draw a distinction between transportation and transporting. And I'll confess that I didn't understand it, but on page 41 of our brief, we cite to Webster's dictionary, which has the definition of the word transportation, and it is, quote, an act, process, or instance of transporting. So they're the same thing by definition. Good. Parker, do you have any questions? Oh, I don't. I have no questions. Judge Bonacci? Well, let me just, two questions about the endorsement. So first of all, when it says with respect to the transportation of students, why would it make sense to have a replacement exclusion whenever you're transporting students? Wouldn't it make sense that you would just have a different exclusion when a student is injured? Why would it make sense for us to read that provision as applying based on the activity as opposed to the claimant? That's certainly, I'd make two points. First, I would, and I hope this isn't fighting the hypothetical too much, but what I would say is it's the insurer's obligation to express whatever it is they're trying to accomplish in clear and unambiguous language. So I don't know that we even need to consider their intent because whatever it was, they didn't do it as it relates to these claims. But also the endorsement doesn't just involve language that replaces the auto exclusion. The very top of the endorsement, and it's 212 in the appendix, it says that it's replacing a number of terms in the policy. It says with respect to the operation of any college or school by you or on your behalf, the following provisions apply. And so really what they're doing is they're trying to retailer certain provisions of the policy to relate to the operation of a school or college. And the final thing that I would say, and we'll talk a little bit about this. Yeah. Okay. I was going to say, so the other question that I had put to the other counsel, what about that last sentence of the endorsement? It says the exclusion applies even if the claimant makes certain allegations of negligence, if the occurrence given rise to the insured. So why doesn't that, why wouldn't that apply here since the occurrence involves an order that was loaned to the insured? Sure. So there's two paragraphs to this portion of the endorsement. And it's obvious that Philadelphia knew how to use the word loaned when it wanted to. If we compare paragraph one of the endorsement to the parallel term in the auto exclusion, the auto exclusion used the word loaned, whereas the parallel first paragraph of endorsement does not. So the only real way to take account of that very deliberate drafting decision and still take account of the fact that the word loaned does appear in the second paragraph is to take them as separate kinds of, relating to separate kinds of claims. The first paragraph relating to issues arising from the operation of the vehicle and the second involving negligence, hiring, employment, training, or monitoring. And we can view those as separate claims and in common law negligence, we do. One is you are responsible for the operation. Yeah, but I mean, it mentions the supervision, hiring, employment, or training, and it says even if the claim against the insured involves those things. So why would we read the last part that says, if the underlying conduct involves a loaned auto, why would that be, why would that be limited by the even if clause? Well, there's only two ways to harmonize the provision. One is to launder the word loaned from the second paragraph back into the first, even though it was clearly a deliberate decision not to use the word loaned in the first. Because under the reading that your honor is proposing, we're basically moving the word loaned back up, even though it's not there. The second is to adopt an awkward, but at least consistent reading of the term, even if. But one or the other of those terms has to give, and a better way to read the policy in one that gives effect to the substantive decision to omit the word loans is to read them for separate kinds of claims. And again, any ambiguity that exists has to be considered against the other. Thank you. Thank you very much. We'll hear rebuttal from Mr. Bradley. You have two minutes. Thank you, your honor. The way to harmonize the two is the law is in this area where you have an exclusion. Now we submit exclusion G, the auto exclusion applies, but they're all to be read in seriatim. If one applies, there's no need to go any further. We submit exclusion G applies. Now the phraseology of exclusion G is specific. The yeshiva is a school. And as our case law, none in this jurisdiction, but every case that we have found that has interpreted and elsewhere that the endorsement was intended to in effect, plug a gap where students on a bus were injured. And this is where I think it, I can highlight it, that it makes sense. If a bus company that we, that the yeshiva hires run the pedestrian over, the yeshiva is not liable. The bus company is, we're not liable for the conduct of an independent contractor, but there is a gap in the, in the on that bus. We owe them a continuing duty if we place them on a bus that we hire. So the overall purpose of the, and let me just back up and, and it says replaced only with respect to the transportation of students. Otherwise exclusion G is in force. There's no other, there's no other way to reconcile the two. And I agree with the earlier questioning that the reality is in many, many, many scenarios, they're functionally identical. There is overlap, but there is a gap and the gap is intended to be filled. Thank you very much, Mr. Bradley. Uh, we will reserve decision. Thank you.